## Joseph Schwartz v. Thirty-two Flatboats.

The qualifications of the members of the City Council cannot be inquired into in a suit to enforce a contract made by the Mayor, under a resolution of that body authorizing it.

A sale made at auction by the Comptroller, and afterwards clothed with the formalities of an authentic act, cannot be annulled on the ground, that the adjudication was made by a person who was not regularly licensed as an auctioneer.

Wharfage dues charged by a corporation, are not, properly speaking, a *tax*, like that which is levied for the support of government.

APPEAL from the District Court of the Parish of Jefferson, *Burthe*, J. *A. W. Jourdan* and *C. Roselius*, for plaintiff and appellee. *R. K. Cutler*, for defendants and appellants.

LAND, J. This is a proceeding *in rem*, instituted by plaintiff as lessee of certain revenues of the city of Jefferson, for the recovery of wharfage charges or taxes due by the owners of the boats, provisionally seized in this suit.

The opinion of the District Judge is elaborate, and his conclusions upon the merits correct.

SWARTZ
*v.*
FLATBOATS.

He did not err in rejecting the testimony offered on behalf of defendants. The testimony offered was immaterial.

For the reasons given by the District Judge, it is ordered, adjudged and decreed, that the judgment be affirmed, with costs, subject to a credit of ninety dollars remitted in the court below.

---

### OPINION OF THE DISTRICT JUDGE.

At a sale made by the Comptroller of the City of Jefferson, under the directions of the Mayor and Aldermen of Jefferson City, *Joseph Schwartz* became the purchaser of the privilege of collecting for his own use and benefit, the revenues of the port of said town during eight years. The adjudication was ratified by the council, and the Mayor authorized to sign a transfer of the rights of the corporation ; the lessee agreeing to collect the wharf and levee dues according to the tariff of port charges adopted at the sitting of May 4th, 1858.

The present suit is brought by the lessee to recover the wharfage due by thirty-two flatboats, under said tariff of charges. A number of similar suits having been brought either against the owners, or against the property itself where the owners were unknown, the different cases have, by agreement, been consolidated.

The defendants, after excepting to the demand of plaintiff on the ground that the suit is not properly brought, because the City of Jefferson is the only party which can stand in judgment in a case of this nature, plead the following means of defence :

1st. The contract is null, because it is a contract between *T. F. Laizer*, Mayor, and *Schwartz*, and that the Mayor cannot bind the corporation. In order to be binding upon the corporation, the contract should have been made in the name of said corporation.

2d. All the proceedings of the council in this matter are null and void, because some of the members of said council were not legally in office, and were incapable of doing any act obligatory on the City of Jefferson.

3d. The council of Jefferson City is a judicial person, having no other powers than those specially granted by its charter, and no power has been given to lease the port revenues ; they, therefore, could not make such contract.

4th. *Schwartz* used fraudulent means to have the tariff of port charges changed ; and the said *Schwartz*, a committee of the council, and some of the defendants, had made an agreement before the adoption of the tariff, by which certain levee charges should be fixed at a certain sum, when, in fact, the tariff has been fixed at a much higher rate.

5th. The sale was made at auction by the Comptroller, who had no right to make such sale. The sale, therefore, is null.

6th. The ordinance fixing the tariff is unconstitutional, inasmuch as it is not equal and uniform.

7th. The council had no right to sell the future revenues, and the sale is made for a much smaller price than the council could have collected itself.

8th. The lessee has not complied with the obligations of the contract, by neglecting to place check posts, repair wharves, &c. The contract is, therefore, null and void.

9th. The ordinances ordering the sale, fixing the tariff, authorizing the Mayor to sign the contract, are null and void, because the council was by law prohibited

from transacting any business in the month of May, until they had provided for the payment of the interest of the funded debt.

Such is the defence, and we will examine these different pleas *seriatim :*

I. The contract purports to be between *F. J. Laizer,* Mayor of the city of Jefferson, and *Joseph Schwartz ;* after reciting the quality in which *J. F. Laizer* appears, the act states that the contract is made in conformity with an adjudication and sale made by order of the council, and there is annexed to the contract a resolution of that body authorizing the Mayor to sign the act. It is clear, then, that the act is that of the council, represented by its Mayor, and not that of the Mayor alone.

II. The question raised in the second ground of defence was decided incidentally, and after mature deliberation, the court has not changed its opinion, and thinks that the qualifications of the members of the council cannot be inquired into in these proceedings.

III. It is true that the City of Jefferson is a judicial person, and has no other powers than those specially granted by its charter or by necessary implication. The question now presented to the court is this : Does the charter of the City of Jefferson give to the corporation the right to lease the revenues of the port ? We find by section first of the charter, " that the corporation has the power to sue and be sued, plead and be impleaded, defend and be defended, in any court whatever ; to hold, possess, enjoy and retain, all and every kind of property whatever, provided the same be for municipal purposes, and the same to sell, alien, *lease, farm* and dispose of.

Sec. 12th of the charter gives to the corporation power to lay and collect taxes *in such a manner*, and for such amounts as they may deem expedient on all steamboats, ships, flatboats, rafts and crafts of every description, landing at the levee of said corporation.

These two sections of the charter are too clear to admit of any doubt upon the question of power to lease the revenues of the port. But, says the defence, the council can only sell transfer or lease for municipal purposes. For what other than municipal purposes could the contract have been entered into ? The farming of markets, wharves, port dues, &c., are clearly acts of administration, and may be made injudiciously. But is nevertheless a right which corporations enjoy and which they can exercise.

IV. The question raised on the fourth ground of defence has also been decided incidentally. We are, indeed, at a loss to know how a binding agreement could have been made between *Schwartz*, the committee of the council, and some of the defendants, about the rates of wharfage, before the passing of the ordinance fixing the tariff, and before the adjudication by the Comptroller to *Schwartz.*

V. The charter provides that " all contracts for public works, or for materials and supplies, ordered by the council, shall be offered by the Comptroller at public auction, and given to the lowest bidder. The Comptroller shall, in addition to the duties herein enumerated, perform such others as the council may prescribe."

Admitting, for the sake of argument, that the Comptroller can only act as an auctioneer for the sale of contracts for public works and supplies, it does not follow that an adjudication made by him to the highest bidder, and ratified by the council, is null and void, as well as the contract signed after the adjudication. The law which forbids the sales at auction by other persons than auctioneers, imposes a fine upon those who exercise the trade or business of auctioneer without

SWARTZ
v.
FLATBOATS.

a license, but it does not annul the sales thus made and afterwards clothed with all the formalities of authentic acts. But cannot the sale of property at auction by the Comptroller be considered as one of those duties which the council may prescribe.

VI. The ordinance fixing the tariff of wharfage and levee charges, is said to be unconstitutional, because it imposes a tax which is neither equal nor uniform.

It has been decided more than once, that such charges were not, properly speaking, a tax, like that which is levied for the support of government. It is a compensation paid by those whose vessels, crafts and rafts, find a landing and accommodations for their vessels and merchandise. We cannot consider such contributions, compensation or tax, to be unequal, because one vessel having a cargo worth thousands of dollars pays the same wharfage as that which is worth but as many hundreds. Can it be reasonably argued, that a scale of proportions should be made of the value of vessels, cargoes, &c., landing at the levee, in order to establish an equal proportion of wharfage for each vessel and cargo? The fluctuations of the market would require a constant change in the tariff, according to the respective value of the vessels and cargoes. The same reasoning applies to rafts.

VII. If the contract is onerous to the corporation, what right does it give to the defendants to interfere? As long as the council of Jefferson City does not complain, we may well suppose that there is no just cause of complaint, for the members of said council are the true representatives of the interests of the people of Jefferson City.

VIII. If the lessee has failed to place check posts, and to repair the wharves, as required by the contract, the council has the right, under said contract, to annul the lease without applying to a court of justice, and without indemnifying the contractor. But how can the defendants expect to be heard, when they complain of the non-execution of a contract to which they are no party. They have mistaken their remedy; and the council of Jefferson City is the source from which they must seek redress.

IX. The Act of 1856, providing for the payment of the interest of the funded debt of Jefferson City, makes it the duty of the council annually, in the month of May, specially to appropriate and set apart from the revenues of said city a certain sum for the payment of the interest of their funded debt, and it is not lawful for the council to proceed to other business until such appropriation is made.

The appropriation was made on the 26th of May, 1858. No particular day of May being fixed by the law for such appropriation, the council could, without violating the law, wait until the last day of May to make it. Art. 2052 of Civil Code says, expressly, "where a time is given or limited, the obligor has, until sunset of the last day, limited for its performance, to comply with his obligation."

Moreover this law, which has no sanction, instructs the council when they are to provide for the payment of their debt, but does not annul their other acts in case they should neglect to comply with its provisions. We cannot believe that the Legislature intended that no act of administration should be done in May, before the appropriation for the payment of the debt. And perhaps it would be necessary for the council to act previously, for the purpose of finding the means of paying said debt.

Upon the whole, we think that no well founded ground of defence has been opposed to plaintiff's claim.

It is, therefore, ordered, adjudged and decreed, that there be judgment in favor

of plaintiff, against the thirty-two flatboats provisionally seized in this case, for the sum of five hundred and sixty dollars, with interest from judicial demand, and costs of suit; this judgment to be satisfied by privilege on said flatboats and on the proceeds of the sale of the same.